UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RACHEL DENNISON,                         Case No. 14-cv-806-pp

         Plaintiff,

v.

CAROLYN W. COLVIN,

         Defendant.

---

**ORDER VACATING THE FINAL ADMINISTRATIVE DECISION OF THE COMMISSIONER, AND REMANDING FOR FURTHER PROCEEDINGS**

---

**I.     Introduction**

Plaintiff Rachel Dennison seeks judicial review of a final decision of defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, who found that she was not "disabled" within the meaning of the Social Security Act. The Social Security Administration's Appeals Council denied review, making the Administrative Law Judge's (ALJ's) decision the final decision of the Commissioner.

The plaintiff contends that the ALJ erred by improperly discounting the opinion of her treating physician while crediting the opinion of the state agency physician who did not examine her. Dkt. No. 12 at 7-12. She further argues that the ALJ erred by relying on his own unsupported medical opinions and conclusions. Id. at 12-14. The plaintiff asserts that this court should reverse the Commissioner's decision and award her benefits, or remand the case to the

1

ALJ for further proceedings. For the reasons stated below, the court will deny the Commissioner's motion, vacate the Commissioner's decision, and remand this case for further proceedings consistent with this order.

## II. STANDARD OF REVIEW

### A. Judicial Review

When the Appeals Council denies a claimant's request review, the ALJ's decision constitutes the final decision of the Commissioner. Moore v. Colvin, 743 F.3d 1118, 1120 (7th Cir. 2014). Judicial review under §405(g) is limited; the court will reverse only if the ALJ's decision is not supported by substantial evidence, is based on legal error, or is so poorly articulated as to prevent meaningful review. Hopgood ex rel. L.G. v. Astrue, 578 F.3d 696, 698 (7th Cir. 2009). "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." Id. (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). If conflicting evidence in the record would allow reasonable minds to disagree about whether the claimant is disabled, the ALJ's decision to deny the application for benefits must be affirmed. Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008).

The court must review the entire record, including both the evidence that supports the ALJ's conclusions as well as evidence that detracts from the ALJ's

conclusions, but it may not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." Id.

In sum, the court will uphold a decision so long as the record reasonably supports it and the ALJ explains his analysis of the evidence with enough detail and clarity to permit meaningful review. Eichstadt v. Astrue, 534 F.3d 663, 665-66 (7th Cir. 2008).

B. Disability Determination

The Social Security Administration provides "disability insurance benefits and supplemental security income to persons who have a 'disability.'" Barnhart v. Thomas, 540 U.S. 20, 22 (2003) (citing 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B)). To qualify as "disabled," the claimant must demonstrate a "physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at 21-22. The Social Security Act further "defines 'disability' as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. at 23.

In evaluating a claim for disability benefits, the ALJ follows a five-step, sequential process, asking:

>  (1) Has the claimant engaged in substantial gainful activity since her alleged onset of disability?

3

(2) If not, does she suffer from a severe, medically determinable impairment?

(3) If so, does that impairment meet or equal any impairment listed in SSA regulations as presumptively disabling?

(4) If not, does she retain the residual functional capacity ("RFC") to perform her past work?

(5) If not, can she perform other jobs existing in significant numbers?

E.g., Villano v. Astrue, 556 F.3d 558, 561 (7th Cir. 2009).

If it appears at any step that the claimant is not disabled, the analysis ends. 20 C.F.R. §404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).

### III. DISCUSSION

A. Factual Background and Medical Opinions

In her original disability application, the plaintiff listed her disability onsent date as May 31, 2009. Dkt. No. 11-6 at 2. She amended that onset date to October 8, 2010, the date on which she was hit by a car while she was riding her bicycle. Dkt. No. 11-3 at 26. In the accident, the plaintiff suffered a broken wrist, which was repaired surgically with a plate and ten screws. Dkt. No. 12 at 2; Dkt. No. 11-3 at 52. She also alleges that her back was injured. CT scans of the plaintiff's cervical, thoracic, and lumbar spine taken on the date of the accident showed degenerative changes, along with anterior wedging with

4

degenerative spurring at T10. Dkt. No. 12 at 1; Dkt. No. 11-9 at 40-45. At her February 5, 2013 disability hearing, the plaintiff testified that she told the medical staff at the hospital in Florida (where the accident took place) that her back was in pain, but "they kept saying nothing." Dkt. No. 11-3 at 49. In her brief, the plaintiff indicates that her back injury continues to cause her pain, and to limit her movements. Dkt. No. 12 at 1. She filed for disability benefits on May 23, 2011. Id. at 1.

At the time of her accident, the plaintiff lived in Florida. She testified at the disability hearing that she moved to Wisconsin in July 2011 because she needed medical care. Dkt. No. 11-3 at 49. On October 6, 2011, Dennison visited the emergency department at Wheaton Franciscan hospital in Racine, Wisconsin, complaining of low back pain. Dkt. No. 11-9 at 92. An x-ray of the plaintiff's lower back showed compression fractures at L1-L2, and also showed mild to moderate spondylosis. Id. at 95.

On November 1, 2011, Dr. Mina Khorshidi, a state agency physician, completed a residual functional capacity assessment, which was based on a review of Dennison's medical records, not an actual examination. Dkt. 11-9 at 100-07. The form Dr. Khorshidi used was a check-a-box format that included space for additional comments. Dr. Khorshidi found that the plaintiff could lift twenty pounds occasionally and ten pounds frequently, id. at 101, could sit, stand, and/or walk for about six hours in an eight-hour workday (with normal breaks), id., and occasionally could kneel and crouch, id. at 102. She found that the plaintiff had no manipulative limitations. Id. at 103. In her narrative

5

comments, Dr. Khorshidi stated that Dennison "reports that all activities cause back pain and that she has pain all day." Id. at 107. Dr. Khorshidi considered the plaintiff's statements to be "partially credible, as objective evidence shows no neurological deficits or gait impairment." Id.

A June 2012 MRI of the plaintiff's lumbar spine showed prior compression fracture deformities at L1-L2. It also showed degenerative disease producing mild central stenosis. Dkt. 11-10 at 57-58. Two weeks later, Dr. Jankovic, who had begun treating the plaintiff in March 2012, limited the plaintiff to sit-down work only for only four hours per day for a three-month period. Id. at 20. On August 15, 2012, Dr. Jankovic limited Dennison to lifting a maximum of five pounds, with no bending, lifting or squatting, for six months, id. at 19, and he renewed that restriction on November 9, 2012, id. at 18. On January 9, 2013, in response to a flare-up of the pain in the plaintiff's wrist, Dr. Jankovic extended the above work restrictions for another year. Id. at 55-56.

According to the residual functional capacity questionnaire Dr. Jankovic completed on December 14, 2012, the plaintiff could not sit for more than fifteen minutes at one time, and could not stand for more than five minutes at one time.[1] Dkt. No. 11-7 at 72. Dr. Jankovic opined that she could not sit, stand, or walk for over two hours total in an eight-hour working day, needed a job that permitted shifting positions at will from sitting, standing, or walking, and would need to take six to eight unscheduled ten-to-fifteen minute breaks

---

[1] The questionnaire Dr. Jankovic completed was a similar "check-the-box" form to the one Dr. Khorshidi had completed a year earlier.

6

during an eight-hour work day. Id. at 72-73. He stated that the plaintiff occasionally could lift less than ten pounds, but never more than that. Id. at 73. Dr. Jankovic opined that the plaintiff had no limits on the use of her right hand, arm, and fingers, but could use her left hand and arm only 10% of an eight-hour work day, and could use her left fingers 50% of an eight-hour work day. Id.

    B.    The ALJ's Opinion

The ALJ issued his decision on March 6, 2013. At step one of the five-step sequential analysis, he found that the plaintiff had not engaged in substantial gainful activity since the accident date of October 8, 2010. Dkt. No. 11-3 at 25. At step two, he found that the plaintiff had "the following severe impairments: low back pain; status post-comminuted fracture, left wrist; status post-arthroscopic surgery, right knee; bilateral carpal tunnel syndrome." Id..

At step three, however, the ALJ concluded that the plaintiff was not disabled because she did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. §§404.1520(d), 404.1525, 404.1526, 404.920(d), 416.925, and 416.926). He based this conclusion on his review of the plaintiff's medical reports, and on his decision that the opinion of one of the physicians who treated the plaintiff was entitled to more weight than the other.

The ALJ spent considerable time summarizing the plaintiff's testimony at the February 5, 2013 hearing, discussing the CT scan taken at the time of the

7

accident and her exam in October 2010, discussing her follow-up in November 2010 and her June 2012 MRI, and discussing her job performance at Lakeside Curative Services. Id. at 27. He also discussed in detail her other medical reports. Id. at 28.

The ALJ recounted the medical records relating to the plaintiff's knee, back, and wrist injuries. He first noted that the plaintiff had a prior anterior cruciate ligament injury, which was surgically repaired. Id. at 26. The plaintiff had undergone a medical consultation in 2009 at the request of the Florida Department of Vocational Resources, which "showed mild tenderness and swelling, but also full extension and flexion without gross instability and intact neurovascular status." Id. at 26-27.

With regard to the plaintiff's back problems, the ALJ wrote that the plaintiff had testified that "she had had no back problems prior to the accident in October 2010," and that Vicodin did not relieve her back and leg pain. Id. at 27. The ALJ pointed out that CT scans taken following the accident showed "some degenerative changes but no evidence of fracture, subluxation, or compromised lumbar vertebral body heights or alignment . . . [a]n older compression fracture was noted at L1-L2, and no treatment was recommended." Id. He recounted that the plaintiff next visited Wheaton Franciscan hospital one year later. Id. An x-ray taken at that visit showed "[a]n old compression fracture at L1-L2 with diffuse mild-to-moderate spondylosis . . . [n]o treatment was indicated." Id. He noted that the plaintiff visited Wheaton Franciscan hospital again the next month, complaining of back pain. Id. The

8

ALJ stated that the hospital told the plaintiff that "they would not continue to refill her pain medication," directed her to follow-up with a physician, and referred her to Dr. John Lopez. Id. The ALJ stated that "there is no evidence that the claimant followed-up with any medical care provider regarding back pain until she had an MRI in June 2012 . . . ." Id.

The ALJ explained that the plaintiff had testified that her left wrist fracture rendered her unable to lift anything, because "any type of lifting aggravated the injury and caused pain." Id. The ALJ cited medical records showing that x-rays taken after the plaintiff's wrist surgery "showed the hardware well seated and the bones in proper alignment." Id. at 28. He pointed out that the plaintiff apparently did not seek any further treatment for her wrist until November 2012, "when x-rays were taken to evaluate pain complaints." Id. That x-ray showed an "ulnar variance," and the plaintiff was advised to perform "home exercises." Id. He recounted the plaintiff's complaint of a left wrist "flare-up" in January 2013. Id. He stated that her medical records showed "findings of diffuse tenderness, no sensory deficits, and full functional mobility with some stiffness were noted, and no therapy was indicated." Id. He indicated that the plaintiff sought no follow-up treatment for her carpel tunnel syndrome other than obtaining the splints that were recommended in 2009. Id.

After this detailed summary, the ALJ stated that the plaintiff's medical providers had determined that her wrist and back conditions were "insufficient to warrant any significant treatment." Id. He stated that the plaintiff "has the residual functional capacity to perform light work, except that she is limited to

9

frequent handling and fingering with the left hand and occasional stooping, crouching, kneeling, crawling, and climbing of ramps and stairs." Id. at 26.

In contrast to the detailed treatment he gave the plaintiff's medical reports, the ALJ gave no explanation for how he decided to credit the opinion provided by one treating physician over another. The ALJ stated that, "as for the opinion evidence," he gave "significant weight" to Dr. Khorshidi's opinion that the plaintiff's allegations that "all activities cause her back pain and that she is in pain all day . . . are not fully credible in light of the evidence in the record . . . ." Id. at 28. The ALJ stated that that Dr. Khorshidi's report "notes the lack of objective evidence" supporting the plaintiff's allegations. Id. But he did not provide any further explanation or detail regarding why he chose to give Dr. Khorshidi's opinion "significant weight."

The ALJ then explained that he gave Dr. Jankovic's opinion "minimal weight." Id. The ALJ found that "the limitations opined by Dr. Janovic [sic] are inconsistent with the objective evidence as well as with the claimant's own statements," id., but did not explain which pieces of evidence contradicted or were inconsistent with Dr. Jankovic's opinion. Further, the ALJ did not discuss the §404.1527(c) factors—the length, nature, and extent of the plaintiff's treatment relationship with Dr. Jankovic, the frequency with which Dr. Jankovic examined the plaintiff, the types of tests Dr. Jankovic performed, and the consistency and supportability of Dr. Jankovic's opinion that the plaintiff was disabled. Dkt. No. 16-3 at 21-25.

10

C. The ALJ Erred in Failing to Provide "Good Reasons" for Giving Dr. Jankovic's Opinion Less Than Controlling Weight.

The medical opinion of a treating source is entitled to controlling weight if the opinion meets a two-part test: it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with other substantial evidence in the case record . . . ." SSR 96-8p; SSR 96-2p; 20 C.F.R. § 404.1527(d)(2); Patterson v. Barnhart, 428 F. Supp. 2d 869, 882-83 (E.D. Wis. 2006). The ALJ may discount a treating physician's opinion "if it is inconsistent with the opinion of a consulting physician . . . or when the treating physician's opinion is inconsistent with substantial evidence in the record." Duncan v. U.S. R.R. Ret. Bd., 787 F.3d 400, 407 (7th Cir. 2015) (citing Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003)). Social Security Regulation 96-2p explains that the term "not inconsistent" does not require that a well-supported treating source's opinion be consistent with all the other evidence. Instead, it requires that there is no other substantial evidence in the record that contradicts or conflicts with the treating source's opinion. SSR 96-2p. Substantial evidence is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion. Depending upon the facts of a given case, any kind of medical or nonmedical evidence can potentially satisfy the substantial evidence test." Id. The contradictory opinion of a non-examining physician is not sufficient by itself to allow the ALJ to reject the opinion of a treating source. Gudgel, 345 F.3d at 470.

11

"If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. §404.1527). Thus, if the ALJ determines that the opinion of a treating source is not entitled to controlling weight, the ALJ must consider whether it is still entitled to some level of deference using the factors set forth in 20 C.F.R. §404.1527. SSR 96–2p. "The ALJ is not required to mechanically walk through all of the §1527(c) factors, but he must explain each factor that is material to his decision." Roninger v. Colvin, No. 13-CV-550, 2014 WL 4926236 at *6 (W.D. Wis. Sept. 30, 2014). An ALJ must offer "good reasons" for discounting the opinion of a treating physician and build a logical bridge from the evidence to his conclusion. Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013); Martinez v. Astrue, 630 F.3d 693, 698 (7th Cir. 2011).

The Seventh Circuit has explained that the treating source rule is like a "bursting bubble presumption"—when contrary evidence is introduced, "the rule drops out and the treating physician's evidence is just one more piece of evidence for the administrative law judge to weigh." Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006). In Hofslien, the Seventh Circuit explained that a treating physician has an advantage

> over other physicians whose reports might figure in a disability case [because] he has spent more time with the claimant. The other physicians . . . might never even have examined the claimant (that was true here), but instead have

12

> based their evidence solely on a review of hospital or other medical records.

Id. Yet, that court also recognized that, "as is well known, many physicians (including those most likely to attract patients who are thinking of seeking disability benefits) will often bend over backwards to assist a patient in obtaining benefits." Id. However, regardless of the source of a medical opinion, the ALJ must evaluate all the evidence in the record to determine the extent to which a medical opinion is supported by the record and to decide what weight to give it. 20 C.F.R. §404.1527(c); SSR 96-5p.

The court finds that there are two problems with the ALJ's analysis. First, "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." Moon v. Colvin, 763 F.3d 718, 722 (7th Cir. 2014); see also Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). In this case, the ALJ concluded that the plaintiff did not receive "any significant treatment" for her symptoms and that "her symptoms are appropriately managed." Dkt. No. 11-3 at 28. But the record shows that, at one point, the plaintiff was prescribed narcotic pain medication (Vicodin), which a number of courts have suggested is not "conservative" treatment. See Solleveld v. Colvin, No. 12-CV-10193, 2014 WL 4100138, at *6 (N.D. Ill. Aug. 20, 2014) ("Although in some cases conservative treatment may contradict the severity of the limitations alleged, here the record shows that Solleveld was prescribed narcotics, including Vicodin and Norco, numerous times over her treatment history."); Schomas v. Colvin, 732 F.3d

13

702, 709 (7th Cir. 2013) (contrasting "'conservative' treatment like over-the-counter medication with 'more aggressive' treatment like prescription narcotics and steroid injections"); Carradine v. Barnhart, 360 F.3d 751, 755 (7th Cir. 2004) (finding it improbable that the claimant would have undergone the pain-treatment procedures that she did, including heavy doses of strong drugs such as Vicodin, "merely in order to strengthen the credibility of her complaints of pain and so increase her chances of obtaining disability benefits.").

The ALJ also appears to have inferred that the plaintiff's conditions were not disabling because her medical history contained gaps in treatment, and did not reflect that she sought additional treatment. See Dkt. No. 11-3 at 28. When assessing the severity of an impairment, an ALJ may consider gaps in treatment, and "why a claimant failed to undergo treatment is one factor to consider." Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2013) (citing Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004)). But an ALJ may not reject a claimant's subjective complaints for failure to obtain treatment without considering the claimant's explanation for that failure. SSR 96–7p.

> The explanations provided by the individual may provide insight into the individual's credibility. For example … [t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms; [t]he individual may not take prescription medication because the side effects are less tolerable than the symptoms; *[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services.*

Id. (emphasis added).

14

In this case, the record suggests that the plaintiff might not have sought additional treatment because she could not afford it. In her correspondence with the Disability Determination Bureau, the plaintiff stated that she had "set up appointment w/ Dr. John Lopez. Cost is 100.00 dollars, *if I can afford it.*" Dkt. 11-7 at 55 (emphasis added). In May 2011, the plaintiff stated to her provider she was "not taking any medication *because I cannot afford medical treatment.*" Id. at 11 (emphasis added). At the plaintiff's October 2011 visit to Wheaton Franciscan hospital, she stated that she threw her prescriptions in the trash "because I have no funds to pay for this." Dkt. No. 11-9 at 92.

SSR 96-7p requires the ALJ to consider the explanations provided by the claimant for not pursuing treatment [or medication use] in a consistent manner. SSR 96-7p. At the hearing, however, the ALJ did not ask the plaintiff why she had not sought further treatment (such as epidural shots or surgery), or why there were gaps in her treatment history. See generally Dkt. No. 11-3 at 44-57. He did not ask the plaintiff any questions about the reasons for the gaps in her treatment or why she did not seek or receive additional treatment. See generally id.

Second, the ALJ's terse discussion of Dr. Jankovic's opinion does not allow the court to determine whether the ALJ considered the relevant §404.1527(c) factors in deciding what weight to give Dr. Jankovic's opinion. In the context of the ALJ's decision, it appears that the ALJ assigned "significant weight" to Dr. Khorshidi's opinion because it was consistent with the ALJ's own RFC determination. But the ALJ did not explain how the evidence supported

15

Dr. Khorshidi's opinion, and Dr. Khorshidi's contradictory opinion did not, by itself, suffice to allow the ALJ to reject Dr. Jankovic's opinion. <u>Gudgel</u>, 345 F.3d at 470. Instead, the ALJ's decision "is primarily a list of different pieces of evidence from the record with little explanation of the importance of the evidence or how it fits together." <u>Faust v. Colvin</u>, 13-CV-323, 2014 WL 348181, at *2 (W.D. Wis. Jan. 31, 2014) (reversing and remanding ALJ's denial of benefits because the ALJ did not articulate link between the evidence and his conclusion).

The ALJ did not build a logical bridge between the record evidence and his decision to discount Dr. Jankovic's medical opinion. Without adequately explaining his decision, the ALJ did not afford the plaintiff the benefit of a properly-considered administrative review. Had the ALJ set aside his own conclusions, and more carefully considered the two medical opinions and why they might present such a stark contrast, he might have credited Dr. Jankovic's opinion and given it controlling weight. For these reasons, the court concludes that remand might lead to a different result. <u>See</u> <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Upon remand, the ALJ must review the evidence fully—particularly the nature and extent of the plaintiff's relationships with the different doctors, and the possible reasons for their differing opinions—before making a judgment as to the weight to be given Dr. Jankovic's opinion.

16

Finally, the court finds that ALJ did not "consider the *combined* effects on [the plaintiff's] ability to work of all [her] impairments and limitations." Alaura v. Colvin, ___ F.3d ___, 2015 WL 4910107, at *3 (7th Cir. Aug. 18, 2015). Even if the ALJ were correct that the plaintiff's knee, wrist and back impairments did not, by themselves, meet the severity requirements of a listing, the law required him to consider whether the combined effects of all of her impairments rose to the required level. "An administrative law judge is unlikely to be capable of assessing the interaction within and overall effect of such a collection of impairments; [he] is not a doctor. But [he] has access to the stable of medical consultants used by the Social Security Administration to evaluate applicants for disability benefits." Id.

It is possible the ALJ did not engage in this analysis because the plaintiff testified that she would be able to work if it were not for her back pain, a statement which, taken in isolation, could suggest that the plaintiff considered her back to be the only impairment keeping her from working. As the plaintiff points out in her brief, however, she also testified that the problems keeping her from being able to work were "[m]y back and my wrist." Dkt. No. 11-3 at 52. That statement could suggest that the plaintiff's combination of impairments prevents her from working. Despite that testimony, the ALJ failed to address whether the plaintiff had a combination of impairments that prevented her from working. For this additional reason, remand is appropriate, so that the ALJ can evaluate the cumulative effect of the plaintiff's impairments on her ability to work.

Case 2:14-cv-00806-PP   Filed 09/29/15   Page 17 of 18   Document 15

## IV. CONCLUSION

The court **ORDERS** that that the final administrative decision of Carolyn W. Colvin, Acting Commissioner of Social Security, denying the plaintiff's application for disability benefits is **VACATED.** The court **REMANDS** this case for further proceedings consistent with this order.

Dated in Milwaukee this 29th day of September, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge